**Shirley DAVIS, Plaintiff-Appellant,**

v.

**Otto E. PASSMAN, Congressman of the United States, Defendant-Appellee.**

**No. 75–1691.**

United States Court of Appeals,
Fifth Circuit.

April 18, 1978.

Stephen J. Katz, Monroe, La., Peter B. Hutt, Sana F. Shtasel, Washington, D. C., for plaintiff-appellant.

Harold Himmelman, Washington Lawyers' Committee for Civil Rights Under Law, Washington, D. C., for Morris Udall, et al.

Jesse D. McDonald, Albert R. Gear, Monroe, La., Barbara L. Herwig, Atty., Washington, D. C., for defendant-appellee.

Robert E. Kopp, Appellate Sec., Civ. Div., Dept. of Justice, Washington, D. C., amicus curiae for the United States.

Before BROWN, Chief Judge, JONES, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In today's decision the court en banc reverses a panel opinion which implied a cause of action for money damages from the Due Process Clause of the fifth amendment of the Constitution.[1]

In her complaint, Ms. Shirley Davis alleged that former Louisiana Congressman Otto Passman dismissed her as his Deputy Administrative Assistant solely because she was a woman and he wanted a man in the position. Davis claimed Passman's actions violated the equal protection component of the fifth amendment Due Process Clause. Invoking the court's jurisdiction under 28 U.S.C.A. § 1331(a), she sought specific relief, damages, and declaratory relief. Because Passman's service in Congress ended after the suit was brought, the claim has narrowed to one for recovery of money damages. The district court based its dismissal of the complaint on alternative grounds: (1) that the law affords Davis no private right of action and (2) that the conduct of which she complained did not violate the Constitution. Addressing only the surviving claim for money damages, we affirm the district court's dismissal on the first ground.

The roster of constitutional rights which have been held to support implied damage actions began its growth with the Supreme Court's seminal decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Court noted that historically damages have been regarded as the "ordinary remedy for an invasion of personal interests in liberty," and implied a cause of action for money damages for the invasion of the plaintiff's liberty which abridged his fourth amendment rights. 403 U.S. at 395, 91 S.Ct. at 2004, 29·L.Ed.2d at 626.

Although the Supreme Court has neither extended nor further explained its initial position, many inferior federal courts have cited *Bivens* as authorizing implied actions for money damages based on constitutional rights other than the fourth amendment.[2] Generally, these decisions have recognized implicitly that *Bivens* has some yet unreached limits. Only isolated district court decisions have asserted that *Bivens* created damage actions for violation of constitutional rights as broadly as if it had decreed that 42 U.S.C.A. § 1983 applied to the federal government.[3] This appeal requires either that we join other circuits. in projecting the scope of *Bivens* to the Due Process Clauses of the fourteenth and fifth amendments,[4] or decline to follow their prece-

1. The opinion of the panel, 544 F.2d 865 (5th Cir. 1977), had, in turn, reversed the district court's dismissal of a complaint filed by a discharged female congressional employee.

2. Apart from the Due Process Clauses, lower federal courts have looked favorably upon *Bivens* actions based upon the first, sixth, eighth, ninth, and thirteenth amendments. *See, e. g., Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975) (thirteenth and fourteenth amendments); *Paton v. La Prade,* 524 F.2d 862, 870 (3d Cir. 1975) (first amendment); *Jihaad v. Carlson,* 410 F.Supp. 1132 (E.D.Mich.1976) (first and eighth amendments); *Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144, 160–62 (D.D.C. 1976) (first and sixth amendments); *Patmore v. Carlson,* 392 F.Supp. 737 (E.D.Ill.1975) (fifth and eighth amendments). *See also* M. Lehmann, Bivens *and Its Progeny,* 4 Hastings Const. L.Q. 531, 566–72 (1977).

3. *E. g., Saffron v. Wilson,* 70 F.R.D. 51, 53 n.1 (D.D.C.1975) ("This holding [*Bivens*] has been interpreted almost unanimously as recognizing a cause of action for damages for violation of any constitutionally protected interest."); *Gardels v. Murphy,* 377 F.Supp. 1389, 1398 (N.D. Ill.1974) ("*Bivens* recognizes a cause of action for damages for violation of any constitutionally protected interest.")

4. Several circuits have allowed plaintiffs to base *Bivens* implied actions solely upon the concept of due process: the Second Circuit, *Gentile v. Wallen,* 562 F.2d 193, 196 (2d Cir. 1977) (fourteenth amendment); the Third Circuit, *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 894 (3d Cir. 1972) (fifth amendment); *but see Mahone v. Waddle,* 564 F.2d 1018 (3d Cir. 1977) (declining to allow cause of action on fourteenth amendment alone); the Fourth Circuit, *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1156–57 (4th Cir. 1974) (fifth amendment); the Seventh Circuit, *Fitzgerald v. Porter Memorial Hospital,* 523 F.2d 716, 718–19 & n.7 (7th Cir. 1975) (denying relief, but holding action could be brought solely under fourteenth amendment); the Eighth Circuit, *Owen v. City of Independence,* 560 F.2d 925, 932 (8th Cir. 1977) (fourteenth

dents. A choice is not foreclosed. In more than one decision the Supreme Court specifically has pointed out that this issue remains open.[5]

Our own decisions appear equivocal on this point. We have ruled district courts erred in finding no jurisdiction to consider damage claims based upon implied causes of action under the Due Process Clauses of both the fifth amendment, *Weir v. Muller,* 527 F.2d 872 (5th Cir. 1976), and the fourteenth amendment, *Reeves v. City of Jackson,* 532 F.2d 491, 495 (5th Cir. 1976). *See also Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n.1 (5th Cir. 1975); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799, 801–02 & n.2 (5th Cir. 1974); *Traylor v. City of Amarillo,* 492 F.2d 1156, 1157 n.2 (5th Cir. 1974). However, in *Rodriguez v. Ritchey,* 556 F.2d 1185, 1192 (5th Cir. 1977) (en banc), we expressly declined to speak as an en banc court on the appropriateness of extending *Bivens* beyond the fourth amendment. Now we find ourselves face-to-face with the necessity to take a firm position.

To decide whether to imply a cause of action for money damages from the fifth amendment Due Process Clause, we must examine *Bivens* itself. While *Bivens* is not without ambiguity, the analysis employed by the Court shows that the cause of action created is not wholly of constitutional dimensions. The opinion of the Court expressly states:

> we cannot accept respondents' formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. For we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress.

403 U.S. at 397, 91 S.Ct. at 2005, 29 L.Ed.2d at 627. The cases relied upon for guidance by the Court in *Bivens* dealt with implying a cause of action from federal statutes that created rights but provided no federal remedy.[6] Moreover, in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court's most comprehensive treatment of implied statutory causes of action,

---

amendment in suit seeking back pay); the Ninth Circuit, *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928, 936–37, 941–43 (9th Cir. 1977) (one cause of action available on fifth amendment just compensation clause and another on fifth amendment due process clause).

Other circuits have commented favorably upon extension of *Bivens* to actions implied from the concept of due process: the Tenth Circuit, *e. g., Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926, 932 & n.5 (10th Cir. 1975) (apparently referring to the fifth amendment); the D.C. Circuit, *e. g., Lewis v. D.C. Dep't of Corrections,* 174 U.S.App.D.C. 483, 484, 533 F.2d 710, 711 (1976).

The First Circuit has declined to imply a cause of action against municipalities from the fourteenth amendment Due Process Clause to grant damages for wrongful death. *Kostka v. Hogg,* 560 F.2d 37, 44 (1st Cir. 1977).

5. In several cases since *Bivens,* the Supreme Court has expressly left open the question whether an action for damages might be implied from the Due Process Clauses. *Mt. Healthy School Dist. v. Doyle,* 429 U.S. 274, 277, 97 S.Ct. 568, 571, 50 L.Ed.2d 471, 477

(1977); *Aldinger v. Howard,* 427 U.S. 1, 3 n.3, 96 S.Ct. 2413, 2415–16 n.3, 49 L.Ed.2d 276, 280 n.3 (1976); *City of Charlotte v. Local 660, Int'l Ass'n of Firefighters,* 426 U.S. 283, 284 n.1, 96 S.Ct. 2036, 2038 n.1, 48 L.Ed.2d 636, 639 n.1 (1976); *District of Columbia v. Carter,* 409 U.S. 418, 432–33, 93 S.Ct. 602, 610, 34 L.Ed.2d 613, 624 (1973). *See also City of Kenosha v. Bruno,* 412 U.S. 507, 514, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109, 116 (1973).

6. *See* 403 U.S. at 396–97, 91 S.Ct. at 2005, 29 L.Ed.2d at 626–27, *citing J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423, 428 (1964) (federal securities laws); *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (action for abuse of process through misuse of statute governing Congress' subpoena power); *United States v. Gilman,* 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954) (indemnity action by government under Federal Tort Claims Act); *United States v. Standard Oil Co.,* 332 U.S. 301, 311, 67 S.Ct. 1604, 1609–10, 91 L.Ed. 2067, 2073 (1947) (government sought implied remedy, based upon established common law action).

the Court relied upon *Bivens* to support two points of its four-part statutory analysis.[7]

If the fourth amendment had mandated a cause of action for monetary damages, *Bivens* would have had no occasion to consult or discuss the action or inaction of Congress. Since the Court explicitly reasoned its precedent on the latter ground, we take the *Bivens* remedy to be one implied as a matter of federal common law [8] and therefore subject, like all such law, to the power of Congress to alter or withdraw. Therefore, we employ a two-step analysis. First, we look to the jurisprudence of statutory implication to determine whether to imply a damage action of non-constitutional dimensions. Second, if this initial inquiry does not suggest that such an action should be implied, we must determine whether the Constitution nevertheless compels the existence of a remedy in damages to vindicate the rights asserted. *See Kostka v. Hogg,* 560 F.2d 37, 42 (1st Cir. 1977). Applying this analysis to Davis' claim, we find that the district court properly concluded that no cause of action existed.

Courts have considered several factors in determining whether to imply a cause of action from a statutory right: (1) whether the provision asserted creates an especial right in the plaintiff, (2) whether the action of Congress in the field indicates an intent to allow such a remedy or at least an intent not to deny the remedy, (3) whether implication of the remedy would

be consistent with the purpose of the right asserted, and (4) whether the cause of action implied would be one appropriate for federal law. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36. Of course, the factors examined in questions of implied statutory causes of action, as set forth in *Cort* and preceding cases, cannot be applied in precisely the same way where implying a *Bivens*-type action is at issue. However, this circuit has held that the *Cort* factors do not set forth a rigid pattern of analysis that a court must follow precisely. Rather, "the Court simply said that several factors were relevant and worthy of consideration." *Olsen v. Shell Oil Co.,* 561 F.2d 1178, 1188 (5th Cir. 1977).

Where federal courts have inferred a federal private cause of action not expressly provided, there generally has been a clearly articulated federal right in the plaintiff. *Cort v. Ash,* 422 U.S. 66, 82, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26, 38 (1975), *citing Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 394–95, 91 S.Ct. 1999, 2003–04, 29 L.Ed.2d 619, 625–26 (1971). While the fifth amendment right to due process certainly confers a right upon Davis, the injury alleged here does not infringe this right as directly as the injury inflicted in the unreasonable search of Webster Bivens offended the fourth amendment. The concept of due process encompasses virtually all of the civil liberties derived from the Constitution. While the fifth amendment Due Process Clause surely exists for the "especial bene-

---

7. *Bivens* is cited in *Cort* to support the proposition that causes of action for damages should not be implied to govern matters "traditionally relegated to state law, in an area basically the concern of the *States,*" 422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36, and the proposition that where such actions have been implied, "there has generally been a clearly articulated federal right in the plaintiff," *id.* at 82, 95 S.Ct. at 2090, 45 L.Ed.2d at 39.

8. *See Kostka v. Hogg,* 560 F.2d 37, 44 & n.7 (1st Cir. 1977). *See also Rodriguez v. Ritchey,* 556 F.2d 1185, 1193–94 (5th Cir. 1977) (en banc). *See generally Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928, 937 & n.14 (9th Cir. 1977); C. Wright, *Federal Courts* § 60 (3d ed. 1976), *citing D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447,

465–75, 62 S.Ct. 676, 683–88, 86 L.Ed. 956, 966, 971 (1942) (Jackson, J., concurring):

Federal common law implements the federal Constitution and statutes, and is conditioned by them. Within these limits, federal courts are free to apply the traditional common-law technique of decision and to draw upon all the sources of the common law . . . .
315 U.S. at 472, 62 S.Ct. at 686, 86 L.Ed. at 969; Monaghan, Foreword: Constitutional Common Law, 89 Harv.L.Rev. 1, 10–13, 22–26 (1975).

Where a remedy is of constitutional dimensions and particular elements are not subject to revisions by Congressional legislation, the Court has clearly so indicated. *See, e. g., Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933); *Seaboard Air Line Ry. Co. v. United States,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923).

fit" of Davis, as *Cort* required, it does not exist with equal certainty to protect her tenure in a non-competitive personal aide position statutorily denominated as service at will. 2 U.S.C.A. § 92.

*Cort* looked to "legislative intent, explicit or implicit, either to create such a remedy or to deny one." 422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36. *Bivens* recognized that congressional intent to create a remedy must guide a court in determining whether to imply a remedy from provisions of the Constitution. 403 U.S. at 396–97, 91 S.Ct. at 2004–05, 29 L.Ed.2d at 626–27. Congressional remedial legislation for employment discrimination has carefully avoided creating a cause of action for money damages for one in Davis' position. In Section 701, Title VII of the Civil Rights Act of 1964, Congress excluded the federal government from the general definition of "employer," thus denying federal employees a statutory damage action under Title VII. 42 U.S.C.A. § 2000e(b). In 1972, Congress amended Title VII to add Section 717, which provided a separate administrative remedy for discrimination in federal employment, but did not extend the remedy to employees of Congress not in the competitive service. Under Section 717, other federal employees may have review in the federal courts of final action by their employing agencies or the Civil Service Board of Review, 42 U.S.C.A. § 2000e–16(a) (1974). Congressional action in designing Title VII remedies shows Congress adhered to the legislative judgment expressed in the statute under which Davis was hired: Members of a congressman's personal staff are removable by him "at any time . . . with or without cause." 2 U.S.C.A. § 92.

Implying the cause of action asserted by Davis would have the anomalous result of granting federal employees in non-competitive positions, whom Congress did not intend to protect, a remedy far more extensive than Congress adopted for federal employees in the competitive service, whom it did intend to protect. When Congress enacted Section 717, it believed that no other effective remedy existed for federal employees treated discriminatorily. *See Brown v. General Services Admin.*, 425 U.S. 820, 826–28, 96 S.Ct. 1961, 1965–66, 48 L.Ed.2d 402, 407–08 (1976); H.R.Rep.No.92–238, 92d Cong. 2d Sess., [1972] U.S.Code Cong. & Admin.News, 2137, 2160. However, in amending Title VII to make it the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination" for those federal employees it covered,[9] Congress did not grant federal employees in the competitive service an action for damages against their superiors in their individual capacities.[10] The Supreme Court has upheld the exclusivity of Title VII as a remedy for federal employment discrimination against employees in the competitive service whom it covers. In *Brown*, the Court held that Congress could require federal employees alleging discrimination to seek relief solely within the confines of Title VII, a limitation which plaintiffs could not surmount by the simple expedient of putting a different label on the pleadings. 425 U.S. at 832, 96 S.Ct. at 1968, 48 L.Ed.2d at 411. Congress cannot have intended to deal more generously with those in Davis' position, from whom it deliberately withheld protection.

*Cort* calls for an examination of the consistency of a statutory cause of action with the statutory scheme enacted by Congress. 422 U.S. at 78, 84, 95 S.Ct. at 2088, 2090–91, 45 L.Ed.2d at 39. The Court in *Bivens* made an analogous inquiry in considering the particular difficulties presented in enforcing the guarantes of the fourth

---

**9.** 425 U.S. at 828, 96 S.Ct. at 1966, 48 L.Ed.2d at 408.

**10.** Section 717, 42 U.S.C.A. § 2000e–16(c) (1974), allows an employee or applicant aggrieved by final action or a failure to take final action on his administrative complaint to file a civil action under Section 706, 42 U.S.C.A. § 2000e–5 (1974), in which "the head of the department, agency, or unit . . . shall be the defendant." However, under this section, federal defendants may be sued only in their official capacities, and not as individuals. *See Keeler v. Hills*, 408 F.Supp. 386, 387 (N.D.Ga. 1975); *see also Jones v. Brennan*, 401 F.Supp. 622, 627 (N.D.Ga.1975).

amendment. The fourth amendment has presented the Court with a series of remedial dilemmas, not encountered in other contexts, with which the Court has wrestled actively for over half a century. The amendment's subject matter is such that law enforcement officials, who necessarily make the searches and seizures it governs, are themselves the group most likely to be hostile to its barriers. This hostility of law enforcement officials to the restraint of the fourth amendment led the Court initially to adopt the exclusionary rule for federal cases, *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and then to apply it to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), when criminal actions and state law tort actions proffered as a substitute remedy in *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), showed themselves ineffective. However, the exclusionary rule—the remedy chosen to secure the right—also has proved less than satisfactory. *See Bivens v. Six Unknown Named Agents*, 403 U.S. at 411, 91 S.Ct. at 2012, 29 L.Ed.2d 635 (1971) (Burger, C. J., dissenting). Thus the Court continues to struggle for a just means for enforcing the fourth amendment. *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Violations of fourth amendment rights occur in a well-defined setting familiar to the courts. The relationship is always one between law enforcement officials and citizens suspected of possessing evidence of crime. The context in which these violations may arise is sufficiently limited to allow the court to determine that an action for damages would be consistent with the purpose of the fourth amendment in future instances in which such an action might be invoked. The fifth amendment Due Process Clause presents no similarly focused remedial issue. To the contrary, the breadth of the concept of due process indicates that the damage remedy sought will not be judicially manageable and that there is simply no way a court can judge whether this remedy will be appropriate for securing the right in future situations where some plaintiff might assert it.

The final factor considered in *Cort* is whether "the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78, 84–85, 95 S.Ct. at 2088, 2091, 45 L.Ed.2d at 36, *citing Bivens v. Six Unknown Named Agents*, 403 U.S. at 394–95, 91 S.Ct. at 2003–04, 29 L.Ed.2d at 625–26. Under this factor we consider the effect that implying a remedy would have upon both state law and the federal judiciary. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480, 494 (1977); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739–741, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539, 551–52 (1975). While the particular circumstances of the case at bar raise questions of federal rights in federal employment, adoption of the broad principle upon which the granting of relief to Davis hinges would expand federal jurisdiction into broad fields of law presently occupied by state court systems. Therefore, we properly consider this factor.

Adoption of Davis' interpretation of *Bivens* would project the penumbra of federal court constitutional due process jurisdiction over every legally cognizable tortious injury inflicted by persons acting under color of federal law because, by its nature, every tort deprives the victim of due process through unlawful appropriation of liberty or property or both. Indeed, logically, the expansive effect of such a holding would not end there. It also would extend federal jurisdiction to cover all state action tort claims, either under pendent jurisdiction, *cf. Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), or under a cause of action implied from the fourteenth amendment. The latter of these state action claims would be cognizable without regard to diversity of citizenship, amount in controversy or other present statutory limitation. Because of the breadth of due process, a decision implying an action for money damages from the fifth amendment Due Process Clause alone would extend an action for damages to any constitutional

guarantee. Thus, the danger of deluging federal courts with claims otherwise redressable in state courts or administrative proceedings looms far more ominously than in *Bivens*. 403 U.S. at 391 & n.4, 91 S.Ct. at 2002 & n.4, 29 L.Ed.2d at 623 & n.4.

Not only does this case fail to present special remedial difficulties analogous to those faced by the Court in dealing with the fourth amendment, but also Congress avoided creating an action for money damages for Congressional aides in non-competitive positions. Moreover, implying this damage action necessarily would draw into the federal judicial system a wide range of cases whose resolution Congress has not committed to the federal judiciary and whose resolution is better suited to courts of general jurisdiction. These special considerations, not present in *Bivens*, eliminate any question of our creating a remedial right under our federal common law powers. This conclusion does not end our inquiry, however, for we still must determine whether the Constitution nevertheless compels an action for money damages implied from the fifth amendment Due Process Clause.

■ Therefore, we next consider whether, in this case, a damage action is indispensible to the effectuation of the fifth amendment Due Process Clause and thus beyond the power of Congress to preclude. *Cf. Kostka v. Hogg*, 560 F.2d at 44. We conclude that the proposed damage remedy is not constitutionally compelled. Not every right that conceivably could be wedged within the literal breadth of due process demands federal protection through a cause of action for monetary damages. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court considered the reach of federal remedies where Congress, in 42 U.S.C.A. § 1983, expressly provided that violation of constitutional rights by one acting under color of state law would give rise to a cause of action for monetary

damages. Even with an express statutory mandate to provide a federal damage action, the Court noted that " 'the range of interests protected by procedural due process is not infinite.' " 424 U.S. at 709, 96 S.Ct. at 1164, 47 L.Ed.2d at 418 (1976), *citing Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). Here, we do not consider, as the Court did in *Paul*, what due process may encompass given an express statutory mandate to extend a cause of action for money damages to the full reach of the right. Rather, we consider the extent to which the Constitution requires that we countermand the clearly discernible will of Congress to create a cause of action where Congress declined to provide one. *Paul* thus teaches that we should restrain our reach far more than the Court did there.

Denying an implied cause of action for money damages does not render meaningless any constitutional rights of congressional employees. A plaintiff might still seek equitable relief where the employer remained in office, although congressional employees in the non-competitive service whose allegedly discriminating employers are not in office may be left without a remedy for sex discrimination in employment unless Congress reverses its present statutory stand.[11] Other due process wrongs would either continue to be remedied in traditional ways through tort actions in courts of appropriate general jurisdiction or through special statutory remedies provided by state legislatures or Congress. Admittedly, some not now covered would remain inactionable.

Another provision of the Constitution must also be considered. Our rejection of the broad principle asserted by Davis is premised upon much more than just another "floodgates" argument. The prospect here is of so crushing an already precariously overloaded federal judicial system as to render meaningless the power the Constitu-

---

11. Davis has not challenged the distinction in Title VII between federal employees in competitive positions and those in non-competitive positions for the purposes of Title VII remedies.

tion vests in Congress under Article III, Section 1, of the Constitution to establish the jurisdictional ambits of the inferior courts it has created. We decline to hold that by implication the fifth amendment requires such an anomalous result.

Given these consequences and our inability to construct a plausible measure for acceptable limits on the right of action Davis would have us imply to remedy the wrong alleged, we refuse to take even a first step down the slippery slope until the Supreme Court answers the open question of whether any such right should exist. Because no right of action may be implied from the Due Process Clause of the fifth amendment, the district court correctly ruled that no civil action for damages may be maintained here. Absent such a right of civil action, the district court cannot exercise jurisdiction under 28 U.S.C.A. § 1331(a), which confers jurisdiction only for "civil actions wherein the matter in controversy . . . arises under the Constitution . . . of the United States." To the extent that *Weir* is inconsistent with this position, it is overruled. Our affirmance on the jurisdictional ground means we do not reach Davis' second contention. Therefore, we vacate the district court's decision on the ground that Passman's conduct in firing her did not violate the Constitution.

The judgment of the district court is

AFFIRMED IN PART, AND IN PART VACATED.

JONES, Circuit Judge, specially concurring:

If there is a constitutional barrier against the exercise of the judicial power to decide the controversy between Mrs. Davis and Mr. Passman then, so I believe, that bar should be raised rather than denying relief because the Congress has failed to enact legislation providing a remedy.

I do not believe that the constitutional provisions here pertinent are to be confined to the Speech and Debate clause.[1] The broader provision by which all legislative powers are vested in the Congress[2] is relevant to this cause. It might be said that the doctrine of inclusio unius est exclusio alterious permits or requires a construction that a Congressman may be judicially questioned for any and all else that a Congressman might do in the exercise of the legislative power except in speech or debate. Obviously the Constitution has no such meaning. We may remind ourselves of Chief Justice Marshall's reminder as to constitutional construction.[3]

In no small measure the genius of the Founding Fathers in framing that most wonderful work ever struck off by man[4] is the separation of powers among the three branches of government. Although the need for checks and balances requires that no one of the departments shall be wholly unrelated to each of the others[5] the essential functions of each are, by the terms of the instrument, separate from those of the others.[6]

Notwithstanding the Gravel[7] and Brewster[8] cases and Senator Ervin's critical

1. The Senators and Representatives _ _ _ for any speech or debate in either House _ _ shall not be questioned in any other place. U.S.Const. Art. I, § 6(1).

2. U.S.Const. Art. I, § 1.

3. "We must never forget that it is a constitution we are expounding." *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 4 L.Ed. 579 (1819)

4. William E. Gladstone, 127 North American Review 179 (Sept.—Cot.1878).

5. J. Madison, The Federalist, No. XLVIII (1852 ed.).

6. It may be appropriate to take note of a recent comment of the Attorney General that although the Constitution and statutes provide that the President shall nominate and by and with the advice and consent of the Senate shall appoint federal judges and U.S. attorneys the reality is that "the Senate nominates and the President confirms persons to fill those offices." Griffin B. Bell, Washington Post, February 27, 1978.

7. *United States v. Gravel*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

8. *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

comments upon them [9] the doctrine of separation of powers survives.

It is not necessary to say that all of the activities of the members of a Congressman's staff are legislative. It will not be said that they are not so in large measure. Their activities are as many and as varied as those of the members served by them. It has been well stated that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos   .   .   ." *Gravel v. United States*, supra, 408 U.S. at 616–17, 92 S.Ct. at 2623.

It seems to me the court held that judicial relief is denied because the Congress has failed to provide a judicial remedy. Rather I think the court should say that the hiring and firing of his "alter ego" is a legislative activity and a part of the exercise of the legislative power. The question is not one of whether there is a judicial remedy. The question, as I see it, is whether or not the controversy is one involving the exercise of the legislative power and within the jurisdiction of the Congress. Let it decide whether there should be absolute immunity. Let it determine whether there is a right and if so to fashion a remedy and designate a tribunal to declare and enforce it. I think it should have been held that the complaint does not state a claim upon which relief can be granted.

RONEY, Circuit Judge, concurring:

I concur in the result reached by the majority opinion, but I am constrained to articulate the difference I see between this case, in which I agree that plaintiff has no constitutional damage remedy based on an alleged fifth amendment violation, and the case of *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977) (*en banc*), in which I joined a dissent on the ground that plaintiff there could claim damages against federal officers for an alleged due process violation.

In his concurring opinion in *Bivens*, Justice Harlan intimated that "the appropri-

ateness of money damages may well vary with the nature of the personal interest asserted." *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 408 n.9, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619, 634 (1971) (Harlan, J., concurring). The distinction I find between *Rodriguez* and the instant case lies in the nature of the personal interest asserted in the "due process" violations alleged. In *Rodriguez* the plaintiff was indicted, arrested, and held in bail for many months for a crime she knew nothing about and of which she was altogether innocent, because of the allegedly unconstitutional acts and conduct of a federal agent. In dissent, both Judges Coleman and Goldberg, with whom I concurred, held that plaintiff had a *Bivens*-type damage claim if the agent's acts were so reckless as to constitute a willful violation of the plaintiff's "right to remain free of unconstitutional intrusions by governmental agents." 556 F.2d at 1195.

To me, there is little distinction between the personal liberty invasion by arrest and indictment in *Rodriguez* and the personal liberty invasion by the private apartment search, seizure, and arrest in *Bivens*. Both cases involved the citizen's right to be let alone by Government agents, unless the agents act within the governmental powers ordained by the Constitution. The Constitution gave limited power to the Government it created. Without a constitutional base, no individual has the legal authority to act against another individual in the name of Government. Some governmental powers are specifically given, but to make absolutely sure that certain powers not given would not be read into the Constitution by overzealous Government officers, either executive, congressional, or judicial, there is a list of "shall nots" in the Bill of Rights. Many of the individual rights enumerated there were neither "created" nor "given" by the Constitution, but rather were recognized as being inherent rights of individuals long before the summer of 1787. The fram-

---

9. Sam J. Ervin, Jr., The Gravel and Brewster cases: An Assault on Congressional Independence, 59 Va.L.Rev. 175 (1973).

ers' approach to those rights in the written Constitution was to try to assure they would remain forever free of governmental intrusion.

Such were the fundamental rights at stake in *Bivens* and *Rodriguez*. Even before the drafting of our Bill of Rights, plaintiffs Bivens and Rodriguez had an inherent right to be free from the type of intrusions they suffered. The constitutional amendments—in *Bivens*, the fourth, and in *Rodriguez*, the fifth—merely protected those rights by specific prohibition against encroachment. I saw *Rodriguez* as being controlled by *Bivens* and would have there held that the case law provided plaintiff Rodriguez with a damage remedy, a damage remedy rooted in preconstitutional notions of tort law.

In this case, however, no similar right is at stake. The defendant has not intruded upon a liberty interest with preconstitutional origins. Historically, employers had an inherent right to hire and fire whom they pleased, for whatever reason, arbitrarily, with no need to account to anyone for their actions, except perhaps to their conscience and their God, and for governmental employers, to their voters. This understanding of the employer-employee relationship prevailed when the Constitution was drafted and, indeed, formed the basis for decisions of the United States Supreme Court in this century. *See Adair v. United States*, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908); *Coppage v. Kansas*, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915). Under this early theory, Ms. Davis had no right to be hired in the first place, and if hired, held her job subject to the whim of the individual who had the power to hire and fire.

But the Constitution has allegedly given her a right not to be fired on the basis of her sex. This right is not, however, a protected inherent right, but a right "created" by the Constitution, a right which in fact encroaches upon what was historically viewed as an inherent right of her employer.

Now the question is, Where does one find the roots for a damage remedy for a viola-

tion of this right so recently discovered in the recesses of the fifth amendment?

The dissenting opinion of Judge Goldberg repeatedly invokes the oft-quoted dictum that "where legal rights have been invaded, and a federal statute provides for a general right to sue for any such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939, 944 (1946), *quoted in Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It is interesting to note, however, that the author of that statement, Justice Black, dissented in *Bivens* on the ground that "neither Congress nor the State of New York [had] enacted legislation creating . . . a right of action [for damages]." 403 U.S. at 428, 91 S.Ct. at 2020. (Black, J., dissenting).

The people, by both Constitution and statute, can and often do create rights for which they provide either no remedy or a restricted remedy for the violation thereof. In analyzing such rights, the courts are not entirely free to afford remedies which have not been provided by the creator of the rights. Thus, to me, Judge Clark makes a necessary analysis to determine whether a damage remedy is rooted in the document which created the violated right. Here we find the relevance of the analysis provided in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). To me also, this is where I part from Judge Goldberg, with whom I joined in *Rodriguez*.

The majority opinion does not "cut back" on *Bivens*. The underlying facts and concept of *Bivens*, by themselves, simply do not cover the rights asserted in this case. The question, then, is not whether *Bivens* applies, but whether the courts will infer from the Constitution itself a damage remedy for the violation of the kind of due process right here claimed. For here, a damage remedy must be rooted in the document— the Constitution—which created the violated right, or a subsequent statute, since there is no preconstitutional source for it.

This gets down to the real difference between the majority and the dissent, in my view. *Bivens* can easily be grounded on the premise that courts may remedy the unlawful violation of constitutionally "protected" individual rights. But it will better satisfy the revered concept of Government "by the people" if the rights "created" by Constitution or statute are remedied in only those ways that can safely be inferred from the creating documents.

*Bivens*, which produced five separate opinions, was not an easy decision. Lower courts probably disserve the law by carrying obviously difficult, narrow, limited decisions of the Supreme Court far beyond their intended reach. Such judicial activity subverts a major objective of law in an organized society: to provide certainty for human action. The majority of this Court has shown precisely the restraint required. If the people, through their elected officials, choose to provide the remedy sought here, so be it; but until then the courts, through their appointed judges, should not require it.

It is impossible to completely align the cases in such a way as to support the distinction made here between *Bivens* and *Rodriguez*, and this case. But so is it impossible to line up the cases to support any other logical *Bivens* premise. There is a bit of symmetry, however, if we look only at the facts of the cases, and the results, and disregard the verbalization of principles in the written opinions. In the purest sense, the facts and the result are the precedent from which *stare decisis* should flow anyway.

As the Supreme Court held in *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946) federal question jurisdiction, as opposed to a federally recognized right of relief, is created by the mere allegation of matters in controversy arising under the Constitution or laws of the United States. Most of the circuit court cases dealing with *Bivens*-type claims in constitutional areas other than the fourth amendment have decided only the federal jurisdiction question. Dicta aside, these cases have merely found allegations of constitutional violations to be sufficiently substantial to ground federal jurisdiction under 28 U.S.C.A § 1331. This is altogether different from inferring a *Bivens*-type damage remedy from the constitutional provisions asserted. *See, e. g., Weir v. Muller*, 527 F.2d 872 (5th Cir. 1976); *Lewis v. District of Columbia Dept. of Corrections*, 174 U.S. App.D.C. 483, 533 F.2d 710 (1976).

Indeed, the only cases cited by the dissent as extending *Bivens* beyond the fourth amendment to the due process rights of discharged employees were not *Bivens* remedy cases. In *Gentile v. Wallen*, 562 F.2d 193 (2d Cir. 1977) the Second Circuit held that a claimed denial of due process by a discharged elementary school teacher stated a cause of action arising directly under the fourteenth amendment. On the question of remedies, however, the court stated: "Whether money damages are available under this cause of action or only equitable relief . . . is a question of remedies that we need not reach . . . ." *Id.* at 197 n.4 (citation omitted). Since the power of federal courts to grant equitable relief for violations of constitutional rights was recognized prior to *Bivens*, the *Gentile* court did not really advance the march of *Bivens* into the area of fifth amendment rights. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 400, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring); *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Likewise, in *Owen v. City of Independence*, 560 F.2d 925 (8th Cir. 1977), the Eighth Circuit held that a discharged city employee was entitled to monetary relief in the nature of backpay for violation of fourteenth amendment due process, but was careful to emphasize that it was discussing "only an equitable remedy . . . ." *Id.* at 933 n.9 and 940.

Cases in which circuit courts have inferred a *Bivens*-type damage remedy from constitutional amendments other than the fourth have varied widely in their facts, but have generally involved an intrusion into a liberty interest having preconstitutional ori-

gins. For example, the first amendment did not "create" the right to express one's views free from unlawful governmental intrusion; it merely protected an already present right from governmental interference.

> Dellums v. Powell, 566 F.2d 167 (D.C.Cir. 1977) (speakers and demonstrators unlawfully arrested by District of Columbia police during 1971 "May Day" demonstration have cause of action for damages arising directly under first amendment); Paton v. LaPrade, 524 F.2d 862 (3rd Cir. 1975) (Bivens-type damage remedy for violation of first amendment rights available to 16-year-old school student who was investigated by FBI after sending off for literature from Socialist Workers Party in connection with her social studies class);
>
> Yiamouyiannis v. Chemical Abstracts Service, 521 F.2d 1392 (6th Cir. 1975) (complaint alleging that because of antifluoridation speeches made by plaintiff, Department of Health, Education and Welfare coerced plaintiff's employer to fire him stated a Bivens-type damages action for violation of first amendment rights).

Nor did the due process clause of the fifth amendment "create" a right in the individual to be free from deprivation of liberty and property interests; it merely provided that government encroachment would be constitutional only if it followed the criteria therein provided.

> Jacobson v. Tahoe Regional Planning Agency, 558 F.2d 928 (9th Cir. 1977) (allegation that certain zoning ordinances enacted by agency operating under federal law effectuated a "taking" of plaintiff's land states a Bivens-type damage claim arising directly under the fifth amendment);
>
> States Marine Lines, Inc. v. Shultz, 498 F.2d 1146 (4th Cir. 1974) (unlawful seizure of plaintiff's property by Customs agents gives rise to a Bivens-type damage action arising directly under fifth amendment);
>
> United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3rd Cir. 1972) (allegations that FBI agents falsified documents and testified falsely in order to convict plaintiff state cause of action for damages arising directly under fifth amendment).

These fundamental rights, unlike the liberty interest asserted by Ms. Davis, are not "created" by the Constitution but are inherent in the individual, either absolutely "protected" by the framers from encroachment by the Government, or "protected" to the extent provided in the Constitution.

In sum, a claim for damages should not be foreclosed merely because it arises out of a fifth amendment violation, rather than a fourth, but should be considered on the basis of the personal interest asserted. The remedy sought for the personal interest asserted by Ms. Davis cannot be infused into the Constitution without unduly burdening the reasoning with the hope, faith, and personal preference of the reasoner. Therefore, I would affirm the district court.

GOLDBERG, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, joins, dissenting:

A majority of the en banc court today holds that no private cause of action for damages may be implied from the due process clause of the fifth amendment to the United States Constitution. I believe that this conclusion, certainly as it applies to the facts of this case, is untenable so long as Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is good law. Finding nothing in subsequent opinions of the Supreme Court which undercuts the vitality of the reasoning in Bivens, I would hold that Shirley Davis has a private right of action for damages to vindicate her constitutional rights. While recognizing that constitutional attrition may be the benchmark of the 1970's, I would leave it for the Supreme Court to place the mark of Cain on Bivens' heretofore unblemished brow. It is a source of deep regret that it is the Fifth Circuit, a court so often exemplary in its affirmation of constitutional rights, which has chosen to start Bivens

down the slippery slope into desuetude and demise. I respectfully dissent.

## I.

In the early part of 1974 Shirley Davis was Deputy Administrative Assistant to Congressman Otto E. Passman of Louisiana's Fifth Congressional District. The Representative terminated Ms. Davis's employment, effective July 31, 1974. In his letter to her explaining the termination decision the Representative wrote, "You are able, energetic and a very hard worker. . . . [H]owever, on account of the unusually heavy workload in my Washington Office, and the diversity of the job, I concluded that it was essential that the understudy to my administrative assistant be a man." The full text of this rather remarkable letter is set out below.[1]

Davis then filed this action against the Representative, claiming he had violated the equal protection component of the fifth amendment's due process clause. She invoked the court's "arising under" jurisdiction pursuant to 28 U.S.C. § 1331(a) and sought relief including, *inter alia*, damages from Passman in his individual capacity. The district court assumed jurisdiction of the case and proceeded to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), holding that "the discharge of plaintiff on alleged grounds of sex discrimination by defendant is not violative of the Fifth Amendment to the Constitution" and that "the law affords no private right of action to plaintiff therefor." A panel of this court reversed the decision of the district court and remanded the case for trial. 544 F.2d 865 (5th Cir. 1977). The panel concluded that taking the complaint's allegations as true, Representative Passman's dismissal of a staff member on the basis of gender violated the equal protection component of the fifth amendment due process clause; that under *Bivens* the Constitution itself affords the dismissed staff member a damages remedy; that sovereign immunity does not bar a damages award against the Representative individually; that the speech or debate clause does not extend to staff dismissals because they are not "legislative tasks" within the Supreme Court's holdings; and that the existence of qualified immunity cannot support the district court's dismissal of the complaint. *See id.* at 882.

Circuit Judge Jones dissented from the judgment of the panel on the basis of the doctrine of separation of powers. *Id.* Representative Passman, by then defeated in his bid for reelection and retired from the

---

1. Dear Mrs. Davis:

My Washington staff joins me in saying that we miss you very much. But, in all probability, inwardly they all agree that I was doing you an injustice by asking you to assume a responsibility that was so trying and so hard that it would have taken all of the pleasure out of your work. I must be completely fair with you, so please note the following:

You are able, energetic and a very hard worker. Certainly you command the respect of those with whom you work; however, on account of the unusually heavy work load in my Washington Office, and the diversity of the job, I concluded that it was essential that the understudy to my Administrative Assistant be a man. I believe you will agree with this conclusion.

It would be unfair to you for me to ask you to waste your talent and experience in my Monroe office because of the low salary that is available because of a junior position. Therefore, and so that your experience and talent may be used to advantage in some organization in need of an extremely capable secretary, I desire that you be continued on the payroll at your present salary through July 31, 1974. This arrangement gives you your full year's vacation of one month, plus one additional month. May I further say that the work load in the Monroe office is very limited, and since you would come in as a junior member of the staff at such a low salary, it would actually be an offense to you.

I know that secretaries with your ability are very much in demand in Monroe. If an additional letter of recommendation from me would be advantageous to you, do not hesitate to let me know. Again, assuring you that my Washington staff and your humble Congressman feel that the contribution you made to our Washington office has helped all of us.

With best wishes,
Sincerely,
/s/ Otto E. Passman
Member of Congress

Congress, filed a petition for rehearing en banc, alleging that congressional hiring and firing were insulated from judicial review under the political question doctrine and the speech or debate clause. The court granted rehearing en banc. Today, not reaching the thorny constitutional issues posed by the scope of congressional immunity under the speech or debate clause, the en banc majority determines that no right of action for damages may be implied from the fifth amendment due process clause. As I dissent from this holding, I necessarily must reach the other issues, including the applicability of the speech or debate clause, considered in the panel opinion. On those issues, I would adhere to the analysis explicated in the panel opinion; I confine my remarks here to the *Bivens* question. On *Bivens*, the thrusts of Judge Clark's opinion for the en banc majority merit defensive parries in response.

**2.** Also worthy of mention is *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933) (founding right to recover just compensation directly on the fifth amendment; statutory recognition not necessary). Of course, it is clear "that there is an implied injunctive remedy for threatened or continuing constitutional violations." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 409 F.2d 718, 723 (2nd Cir. 1969), *rev'd on other grounds*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), citing *Bell v. Hood*, 327 U.S. 678, 684 and n. 4, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 696–97, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *United States v. Lee*, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882). *See also Bivens, supra*, 403 U.S. at 400, 404, 91 S.Ct. at 2006, 2008, 29 L.Ed.2d at 628 (Harlan, J. concurring).

**3.** Lehmann, "*Bivens* and its Progeny," 4 Hastings Const.L.Q. 531, 539 (1977).

**4.** *See* cases cited in majority opinion, *supra*, at n. 5.

**5.** *See* Lehmann, *supra* n. 3, at 540, 604.

**6.** See majority opinion, *supra*, at 795. Apart from decisions in several circuits declining to imply causes of action against municipalities directly under the fourteenth amendment, in view of the exemption of municipalities from liability under 42 U.S.C. § 1983, *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977); *McDonald v. State of Illinois*, 557 F.2d 596, 604–05

## II.

Only in one case has the Supreme Court directly confronted and decided the question whether a federal cause of action for damages may be implied directly from the United States Constitution: *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] Having created in that case "a policy of access,"[3] the Court has since chosen to refrain from possibly premature rigidification of the contours of the *Bivens* action,[4] in effect licensing the lower federal courts to develop their own rules setting the parameters,[5] consistent with the mandate of *Bivens* itself, within which constitutional rights may be vindicated by private damage actions. As noted by the en banc majority, few courts have held that *Bivens* actions are limited to fourth amendment claims.[6] With respect to

(7th Cir.), *cert. denied*, —— U.S. ——, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *cf. Mahone v. Waddle*, 564 F.2d 1018, 1022–25 (3rd Cir. 1977) (declining to imply a constitutional cause of action but finding an effective federal statutory remedy under § 1981), there appear to be no other decisions at the Court of Appeals level rejecting the availability of *Bivens* causes of actions under other constitutional amendments. Circuits founding causes of action directly on constitutional provisions other than the fourth amendment, or finding claims sufficiently substantial to ground jurisdiction on 28 U.S.C. § 1331, include the

D.C. Circuit: *Dellums v. Powell*, 566 F.2d 167, 194–95 (D.C.Cir.1977) (first amendment, cause of action); *Payne v. Government of District of Columbia*, 559 F.2d 809, 818–19 (D.C. Cir.1977) (fifth amendment, jurisdiction; favorable dicta on cause of action); *Lewis v. District of Columbia Department of Corrections*, 174 U.S.App.D.C. 483, 533 F.2d 710 (1976) (fifth amendment, jurisdiction); *accord, Greenya v. George Washington University*, 167 U.S.App. D.C. 379, 385, 512 F.2d 556, 562 n. 13, *cert. denied*, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Apton v. Wilson*, 165 U.S.App.D.C. 22, 35, 506 F.2d 83, 96 (1974); *Cardinale v. Washington Technical Institute*, 163 U.S.App. D.C. 123, 128, 500 F.2d 791, 796 n. 5 (1974); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 55, 478 F.2d 938, 965 and n. 47, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973) (fourth and fifth amendments, jurisdiction; favorable dicta on remedy).

Second Circuit: *Gentile v. Wilson*, 562 F.2d 193, 196–97 (2d Cir. 1977) (fourteenth amend-

the due process clauses of the fifth and fourteenth amendments, the overwhelming weight of authority, particularly at the Court of Appeals level, holds that constitu-

ment due process, cause of action); *accord, Brault v. Town of Milton,* 527 F.2d 730, 734–35 (2d Cir.), *rev'd en banc on other grounds,* 527 F.2d 736 (2d Cir. 1975).

Third Circuit: *Paton v. La Prade,* 524 F.2d 862, 869–70 (3rd Cir. 1975) (first amendment, cause of action); *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 894 (3rd Cir. 1972) (fifth amendment, cause of action); *Gagliardi v. Flint,* 564 F.2d 112, 114–16 (3rd Cir. 1977) (fourteenth amendment, jurisdiction; reserving question of cause of action); *id.* at 117 (Gibbons, J. concurring) (cause of action). *But see Mahone v. Waddle, supra.*

Fourth Circuit: *States Marine Line, Inc. v. Shultz,* 498 F.2d 1146, 1156–57 (4th Cir. 1974) (fifth amendment, cause of action); *cf. Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975) (thirteenth and fourteenth amendments, suggesting jurisdiction).

Fifth Circuit: *Reeves v. City of Jackson,* 532 F.2d 491 (5th Cir. 1976) (suggesting availability of cause of action under eighth amendment and/or fourteenth amendment due process, jurisdiction); *Weir v. Muller,* 527 F.2d 872 (5th Cir. 1976) (fifth amendment, jurisdiction; *see also Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n. 1 (5th Cir. 1975); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799, 801–02 and n. 2 (5th Cir. 1974); *Traylor v. City of Amarillo,* 492 F.2d 1156, 1157 n. 2 (5th Cir. 1974). *But see Rodriguez v. Ritchey,* 556 F.2d 1185, 1192 (5th Cir. 1977) (en banc) (declining to speak on *Bivens* issue).

Sixth Circuit: *Yiamouyiannis v. Chemical Abstracts Service,* 521 F.2d 1392, 1393 (6th Cir. 1975) (first amendment, cause of action; reasoning based on fifth amendment cases).

Seventh Circuit: *Fitzgerald v. Porter Memorial Hospital,* 523 F.2d 716, 718–719 n. 7 (7th Cir. 1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768 (1976) (fourteenth amendment, suggesting availability of cause of action but denying relief); *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 577 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976) (fourteenth amendment procedural due process, jurisdiction; favorable dicta); *cf. Cannon v. University of Chicago,* 559 F.2d 1063, 1082 (7th Cir. 1977) (dicta on availability of relief for violations of fundamental constitutional rights). *But see McDonald v. State of Illinois, supra.*

Eighth Circuit: *Owen v. City of Independence,* 560 F.2d 925 (8th Cir. 1977) (fourteenth amendment due process, cause of action for monetary relief in the nature of backpay against a municipality); *McNally v. Pulitzer Pub. Co.,* 532 F.2d 69, 76 (8th Cir.), *cert. de-*

tional rights may be vindicated through implied causes of action for money damages.[7] And as the en banc majority is also aware, numerous panels of this circuit have ad-

*nied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976) (finding no infringement of fair trial, privacy rights; assuming without deciding availability of *Bivens* cause of action); *Wounded Knee Legal Defense/Offense Committee v. F.B.I.,* 507 F.2d 1281, 1284 (8th Cir. 1974) (sixth amendment right to effective assistance of counsel, jurisdiction).

Ninth Circuit: *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928, 936, 941–42 (9th Cir. 1977) (separate causes of action available under fifth amendment due process clause and fifth amendment just compensation clause); *Bennett v. Campbell,* 564 F.2d 329, 331–32 (9th Cir. 1977) (reversing denial of motion to amend complaint in order to permit assertion of *Bivens* claims under fourth and fifth amendments; suggesting the availability of damage actions for deprivations "of constitutional rights"); *Mark v. Groff,* 521 F.2d 1376, 1378 and n. 1 (9th Cir. 1975) (fifth, sixth and eighth amendments, jurisdiction; reserving question of remedy); *cf. Gray v. Union County Intermediate Education District,* 520 F.2d 803, 805 (9th Cir. 1975) (finding no denial of rights; apparently assuming availability of cause of action for backpay and damages for violation of first amendment and due process rights).

Tenth Circuit: *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926 (10th Cir. 1975) (equal protection and due process, jurisdiction; favorable dicta on cause of action); *Kite v. Kelley,* 546 F.2d 334, 337 (10th Cir. 1976) (first, fourth, fifth, and ninth amendments; finding jurisdiction but denying relief on vicarious liability claim).

District court cases are collected in Lehmann, *supra* n. 3, at 566–68 and nn. 226–229.

Thus, seven circuits have implied causes of action directly from constitutional amendments other than the fourth. Of these, five circuits have implied causes of action from the due process clauses of the fifth and fourteenth amendments. In addition to these five, at least three circuits have found *Bivens* claims under the due process clauses sufficiently substantial to ground federal jurisdiction under 28 U.S.C. § 1331 and have commented favorably upon implication of damage actions from these clauses. Still another circuit, in implying a cause of action under the first amendment, has relied on cases implying causes of action from the fifth amendment. Today the Fifth Circuit becomes the first circuit to reject definitively the availability of a *Bivens* cause of action in any context other than a fourteenth amendment action against a municipality.

7. See cases cited in majority opinion, *supra,* at n. 4, and note 6 *supra.*

hered to *Bivens'* policy of access, finding jurisdiction under 28 U.S.C. § 1331 for district courts to entertain implied causes of action for damages under the due process clauses of the fifth and fourteenth amendments.[8] Nevertheless, taking Ms. Davis' allegations as true, the en banc court today chooses to deny a right of action to the victim of as blatant a case of gender-based discrimination as is within my experience on this court.[9] Would that the Fifth Circuit had instead chosen to add one more jewel to its liberating diadem of pioneering jurisprudence. Still, the en banc court is correct in noting that despite the overwhelming weight of authority, choice is not foreclosed. The Supreme Court has invited judicial creativity, and Judge Clark, with his customary care and acuity, has authored as persuasive a rebuttal of this authority as might be imagined. Yet I remain unpersuaded. The test is *Bivens.* I offer here a reading of that case which I believe to be more consistent with its holding and more harmonious with its spirit than the reading offered by the majority.

## III.

If I understand the majority's treatment of *Bivens,* the crux of its reasoning is that the Supreme Court was able to imply a damages remedy for violation of the fourth amendment by federal officers only because Congress had not spoken. The Supreme Court's indication of a possible willingness to accord some deference to an "explicit congressional declaration" of preference for an alternative remedy "equally effective in the view of Congress," *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005, is apparently taken to mean that a cause of action for damages is not "part and parcel of the underlying constitutional right," therefore "is not wholly

of constitutional dimensions," and thus is "subject to the will of the Congress for the substitution of other remedies, *so long as the minimum demands of the Constitution are met.*" (Emphasis added). Majority opinion, *supra,* at 796–798.

What follows from this perspective is that the implication of a cause of action from the Constitution is initially to be governed, or at least guided, by the standards applicable to implication of remedies from statutory enactments, as elucidated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Only if a cause of action for damages satisfies these statutory standards, or if "a *damage action* is *indispensible* to the effectuation of the fifth amendment," (emphasis added), majority opinion, *supra* at 800, may a damage remedy be implied.

I believe that proper application of the *Cort* analysis to a constitutional claim would justify implication of a damages remedy directly from the fifth amendment on the facts of this case. But my disagreement with the majority is a more fundamental one: I believe the premises underlying the analytic structure proposed by the majority are irreconcilable with the Supreme Court's opinion in *Bivens.*

In my view *Bivens* is a decision of constitutional magnitude. The fundamental inquiry in *Bivens* was whether the Constitution mandates *some* remedy for a petitioner whose constitutional rights have been violated. Only after finding that *some* remedy is constitutionally compelled did the Supreme Court go on to consider which remedy is *appropriate*—not necessary in itself— in the circumstances of a given case to redress the constitutional violation:

---

**8.** *See* majority opinion, *supra,* at 796–797, and cases cited therein.

**9.** Gender-based discrimination may violate the due process clause of the fifth amendment. "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, 95 S.Ct. 1225, 1228 n. 2, 43

L.Ed.2d 514 (1975), *quoting Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). *See also Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). "This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Wiesenfeld, supra* (citations omitted).

[T]he Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen. It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."

403 U.S. at 392, 91 S.Ct. at 2002, citing, *inter alia, Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). The Constitution creates a right in the plaintiff; the courts are to adjust their remedies to accord relief.

That the fourth amendment might be enforced by other plaintiffs, in other contexts, through mechanisms other than a damage action, was passed over by the *Bivens* majority as of little moment. What was significant to the Court was the remedial plight of the petitioner in the case before it. As stated by Justice Harlan, concurring:

[I]t is apparent that some form of damages is the only possible remedy for someone in Bivens' alleged position. . . . [A]ssuming Bivens' innocence of the crime charged, the "exclusionary rule" is simply irrelevant. For people in Bivens' shoes, it is damages or nothing.

*Id.* at 409–10, 91 S.Ct. at 2011–12. On the need to provide an effective remedy, the Court was unequivocal:

[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for any such invasion, federal courts may use any available remedy to make good the wrong done.

*Id.* at 396, 91 S.Ct. at 2004, citing *Bell v. Hood,* 327 U.S. at 684, 66 S.Ct. at 777. In this respect, provision of a damage remedy "should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Id.* at 395, 91 S.Ct. at 2004 (citations omitted).

The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his [constitutional] rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts.

*Id.* at 397, 91 S.Ct. at 2005 (citations omitted). Responding to the suggestion that a more stringent test should govern the grant of damages in constitutional cases, Justice Harlan stated:

These arguments . . . seem to be adequately answered by the point that the judiciary has a particular responsibility to assure the vindication of constitutional interests such as those embraced by the Fourth Amendment.

*Id.* at 407, 91 S.Ct. at 2010 (concurring opinion) (footnote omitted).

The en banc majority's apparent conclusion that the *Bivens* damage action is of non-constitutional dimensions seems to be tied to its assumption [10] that a cause of action not "part and parcel of the underlying constitutional right" is merely federal common law of less than constitutional dimensions. But to state that the Court may accord some deference to a congressional choice of remedy "equally effective in the view of Congress" is only to admit the possibility of *substitutes* for the damage remedy, not to say that Congress may eliminate all means of vindication of a federal constitutional right.[11] Had Congress cho-

10. This assumption is speculative on the basis of *Bivens* itself. *See* Harlan, J., concurring:

I express no view on the Government's suggestion that congressional authority to simply discard the remedy the Court today authorizes might be in doubt; nor do I under-

stand the Court's opinion today to express any view on that particular question. *Id.* at 407 n. 7, 91 S.Ct. at 2010.

11. Professor Dellinger suggests that the passage in *Bivens* finding no "explicit congressional declaration" and rejecting "formulation of the question as whether the availability of

sen to provide a remedy alternative to money damages to those "in Davis' shoes," this court would be correct in according that choice deference, though even in those circumstances,

> [t]he ultimate determination of whether a remedial scheme appropriately effectuates the mandate of the Constitution is, of course, to be made by the Court as an exercise of constitutional judicial review.[12]

Perhaps the clearest statement by the Supreme Court itself on this subject is found in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

> Congress and the States are free to develop their own safeguards for the privilege, so long as they are fully as effective as those described above in informing accused persons of their right of silence and in affording a continuous opportunity to exercise it. In any event, however, the issues presented are of constitutional dimensions and must be determined by the courts. . . . Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them.

*Id.* at 490–91, 86 S.Ct. at 1636.

The opinion of the en banc majority totally fails to address the core inquiry commanded by *Bivens*. Apart from a passing reference not applicable to the plight of Ms. Davis that "[a] plaintiff might still seek equitable relief where the employer remained in office," majority opinion, *supra*, at 800, the en banc court nowhere considers whether *some* remedy must be available to vindicate fifth amendment rights. Where is the sensitivity that moved Justice Harlan to observe "For people in Bivens' shoes, it is damages or nothing"? 403 U.S. at 410, 91 S.Ct. at 2012. The majority essentially ignores the constitutional predicate for the *Bivens* decision, i. e., that there be a remedy, and reformulates the inquiry in a far more stringent fashion: a cause of action for damages will be implied only if damages, specifically, are in some absolute sense *necessary* to effectuate the constitutional mandate. The court then proceeds to find a damage remedy unnecessary while simultaneously acknowledging that constitutional deprivations of the sort suffered by Ms. Davis "would remain inactionable," and that Ms. Davis "may be left without a remedy for sex discrimination in employment" unless Congress chooses to create one. Majority opinion, *supra*, at 800.

In short, the majority opinion errs because it answers the wrong question. If Congress had provided an alternative remedy and explicitly excluded a remedy in damages, the appropriate inquiry would indeed be whether a damage remedy as such is necessary, nevertheless, to effectuate the constitutional guarantee, and therefore constitutionally required. But where, as here, *no* alternative remedy has been made available, that inquiry is simply irrelevant. In leaving Ms. Davis without any remedy, the majority's approach seems to me an utter negation of *Bivens* in both letter and spirit.

A further result of the majority's analytic approach is that its opinion never comes

---

money damages is necessary to enforce the Fourth Amendment," 403 U.S. at 397, 91 S.Ct. at 2005, might be read

"affirmatively . . . to describe the conditions under which the Court should defer to congressional judgment even though a remedy may be substantively bound to constitutional provisions."

Dellinger, "Of Rights and Remedies: The Constitution as a Sword," 85 Harv.L.Rev. 1532, 1548 n. 89 (1972). Thus, where these conditions have not been met—where Congress has not provided an effective alternative remedy—there is no occasion for deference to congressional judgment. The courts must therefore "adjust their remedies so as to grant the necessary relief." 403 U.S. at 392, 91 S.Ct. at 2002, *quoting Bell v. Hood.*

12. *Dellinger, supra* n. 11. I find nothing in Professor Monaghan's provocative article, cited by the majority, inconsistent with this conclusion. Monaghan, "Foreward: Constitutional Common Law," 89 Harv.L.Rev. 1 (1975): "I think that *Bivens* is an explicit recognition that the constitutional guarantee embraces a right of action . . . which is enforceable by any appropriate remedy including damages . . ." *Id.* at 24 n. 125. *See generally* Cox, "The Role of Congress in Constitutional Determinations," 40 Cincinnati L.Rev. 199, 247–261 (1971); Burt, "*Miranda* and Title II: A Morganatic Marriage," 1969 Sup.Ct.Rev. 81.

to terms with the appropriateness of a remedy in damages as opposed to alternative remedial devices which the *court* might make available. The majority's unelaborated suggestion of "equitable relief" is oblivious to those constitutional values, critically implicated in this case, underlying the speech or debate clause and the doctrine of separation of powers. Congress has spoken specifically to its views on the nature of the working relationship between Congressmen and their personal staffs by classifying employees like Ms. Davis as removable "at any time . . . with or without cause." The Supreme Court has accorded congressional staffers speech or debate clause protections in certain circumstances, recognizing that staffers may act as congressional alter egos in the performance of certain legislative tasks. *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). *See Davis v. Passman,* 544 F.2d at 877–81 (panel opinion). Apparently the majority feels these values can be better effectuated, consistent with the requirements of the fifth amendment, not by actions for damages but by injunctive orders requiring Congressmen to employ particular individuals. This is not the occasion for a definitive statement on the circumstances which might justify implication of a private action for equitable relief to vindicate fifth amendment rights.[13] But on the facts of the case before us, I would have thought that such "special factors counselling hesitation in the absence of affirmative action by Congress," *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2005, are more germane to the implication of equitable relief than to implication of an action for damages.

Similarly, it would seem to me that the special problems of congressional immunity under the speech or debate clause and the doctrine of separation of powers render this case uniquely appropriate for adjudication in the federal courts under a federal cause of action. Much of the *Bivens* opinion concerns the difficulties and inadequacies of state court or state law adjudications of federal immunities in the context of constitutional claims; that reasoning is, if anything, even more powerful with respect to the issues presented here.

The majority's abiding fear seems to be "the danger of deluging federal courts with claims otherwise redressable in state courts or administrative proceedings"[14] by "project[ing] the penumbra of federal court constitutional due process jurisdiction over every legally cognizable tortious injury inflicted by persons acting under color of federal law . . ." and "extend[ing] federal jurisdiction to cover all state action tort claims . . . without regard to diversity of citizenship, amount in controversy or other present statutory limitation." Majority opinion, *supra,* at 799–800. The majority refuses "to take even a first step down the slippery slope," "[g]iven these consequences and our inability to construct a plausible measure of acceptable limits on the right of action Davis would have us imply to remedy the wrong alleged . . . ." *Id.* at 801. A like contention was raised in *Bivens.* Justice Harlan had this response:

> [T]he question appears to be how Fourth Amendment interests rank on a scale of social values compared with, for example, the interest of stockholders defrauded by misleading proxies. See *J. I. Case Co. v. Borak, supra.* Judicial resources, I am well aware, are increasingly scarce these days. Nonetheless, when we automatically close the courthouse door solely on this basis, we implicitly express a value judgment on the comparative importance of classes of legally protected interests. And current limitations upon the effective functioning of the courts arising from budgetary inadequacies should not be permitted to stand in the way of the recognition of otherwise sound constitutional principles.

---

13. *See, e. g., Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 1965 and n. 7, 48 L.Ed.2d 402 (1976), and note 2 *supra.*

14. The majority never indicates how Ms. Davis' claim might be "otherwise redressable in state courts or administrative proceedings."

403 U.S. at 410–11, 91 S.Ct. at 2012 (concurring opinion). Even on the majority's own premises, I am considerably more confident in the ability of courts to discern, in a careful and focused manner attentive to the facts of the case before them, when the pendulum has swung too far and how its course may be corrected. I do not believe that the majority's approach to the facts of this case is such a focused inquiry; nor do I believe the pendulum has swung too far here. We have before us no illusory or fabricated procedural due process claim which raises the specter of wholesale importation of traditional state tort law actions into the federal courts, but a discrete claim of discrimination on the basis of gender in violation of the equal protection guarantees of the federal Constitution, in a context particularly appropriate to adjudication in a federal forum. This is precisely the sort of case mete for judicial determination and susceptible to the application of traditional judicial standards.

The majority's invocation of the twin horsemen of the contemporary judicial apocalypse, the floodgate and the slippery slope, and its refusal to act in the spirit of *Bivens* "until the Supreme Court answers the open question," majority opinion, *supra*, at 801, seem to me not an example of judicial restraint but of judicial abdication. I would prefer the approach taken by the *Bivens* majority in its quotation of one of the fundaments of our constitutional jurisprudence:

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury,

403 U.S. at 397, 91 S.Ct. at 2005, *quoting Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 163, 2 L.Ed. 60 (1803), and by the Fourth Circuit in extending *Bivens* to fifth amendment due process claims:

> The necessity and appropriateness of judicial relief is no less compelling in this case than it was in *Bivens*. As in *Bivens*: A common law or state tort remedy may or may not afford a means of redressing this wrong, but in any case, will not be tailored specifically to cases of

lawlessness pursuant to federal authority; the claim presented is obviously appropriate for money damages; and other remedies such as injunctive or relief in the nature of mandamus are no longer viable alternatives.

*States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1157 (4th Cir. 1974).

I had not thought the fifth amendment was lodged behind an iron curtain, separating it from the rest of our constitutional protections. That the windows may open wide and the winds of freedom sweep through is no reason for rejecting the Davis claim. Are we to develop a calculus of constitutional access, granting rights to one out of seven persons deprived, one out of two, one out of a thousand, in order to control our docket? One wonders what would have happened had such constitutional parsimony pervaded our history. Hopefully the courthouse door, too often closed in recent years, will soon swing open again, and liberty shall ring forth once more from the halls of justice.

### IV.

Much of the majority's discussion is devoted to an analysis of the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) factors governing implication of causes of action from federal statutes. I have already indicated why this analysis seems somewhat beside the point given the constitutional mandate that *some* remedy be available to vindicate constitutional rights. Given that the court has adopted this approach, however, it is incumbent on me to respond to the majority's application of the *Cort* criteria.

I note initially that the majority makes no attempt in its *Cort* analysis to assess the relevance of the fact that Ms. Davis is seeking to vindicate a right granted by the Constitution itself, and thus beyond the ability of Congress to eliminate, rather than a statutory right of the sort Congress giveth and may take away. While recognizing that the *Cort* statutory analysis "cannot be applied [to the Constitution] in precisely the

same way," the majority is content to proceed on the basis of a prior statement by this court (in a statutory case) that the *Cort* "factors [are] relevant and worthy of consideration." Majority opinion, *supra*, at 797, quoting *Olsen v. Shell Oil Co.*, 561 F.2d 1178, 1188 (5th Cir. 1977).

I think it is possible to do better. By recognizing the constitutional context within which it is here applied, the *Cort v. Ash* style of analysis may be turned to productive use in the sphere of constitutional common law. Properly applied, the *Cort* factors may serve to illuminate the choice of an appropriate remedial mechanism to vindicate constitutional rights. *Cort* thus guides the determination, not of *whether* to imply *any* remedy, but of *which* remedy it is appropriate to recognize. I believe that such a contextually sensitive application of the *Cort* criteria supports the panel decision in this case, and it is with this perspective that I turn to the majority's *Cort* analysis.[15]

In *Cort v. Ash*, the relevant portion of which concerns whether a corporate stockholder may secure derivative damage relief from corporate directors under 18 U.S.C. § 610 for corporate violations of the federal election campaign laws, the Supreme Court declined to imply a private cause of action for damages because

> implication of such a federal cause of action is not suggested by the legislative context of § 610 or required to accomplish Congress' purposes in enacting the statute.

422 U.S. at 69, 95 S.Ct. at 2084. The Court articulated four factors to guide its analysis in reaching this conclusion. The first factor has been central to all implication cases, from the first statutory implication decision in which it was originally formulated, *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916), through to

*Bivens* and more recent statutory cases: "is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff?" 422 U.S. at 78, 95 S.Ct. at 2088, citing *Rigsby*, *supra*, 241 U.S. at 39, 36 S.Ct. 482. As the Supreme Court explained, "in those situations in which we have inferred a federal private cause of action not expressly provided, there has generally been a clearly articulated federal right in the plaintiff," citing *Bivens*, "or a pervasive legislative scheme governing the relationship between the plaintiff class and the defendant class in a particular regard." 422 U.S. at 82, 95 S.Ct. at 2090 (citation omitted).

The en banc opinion in the instant case appears to acknowledge that "the fifth amendment right to due process certainly confers a right upon Davis." Majority opinion, *supra*, at 797. There can be no suggestion that the fifth amendment's protection of Davis is "at best a subsidiary purpose" of the constitutional guarantee. *Cf. Cort, id.*, 422 U.S. at 80, 95 S.Ct. at 2089. With respect to this first, and I think predominant, factor, that is all that *Cort* requires. Nor is more required by *Bivens*. That decision was explicit in the role of the fourth amendment:

> It guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority.

403 U.S. at 392, 91 S.Ct. at 2002.

I cannot understand why the equal protection component of the fifth amendment due process clause does not equally guarantee to all citizens of the United States, including Ms. Davis, the absolute right to be free from unconstitutional job discrimination on the basis of sex carried out by virtue of federal authority.[16]

---

15. I recognize that the majority's analysis proceeds from a different perspective. Were the fifth amendment simply a statutory enactment, there can be no doubt that a congressional determination to deny a private right of action for damages would be decisive under *Cort*. That conclusion, to the extent it embodies the majority's analytic approach, seems to me

quite unshakeable but thoroughly irrelevant to this case.

16. It is frankly beyond my ken to understand first, the source of the majority's imputation of an additional hurdle of some degree of required specificity, or second, how the equal protection component of the fifth amendment is in this

It is with respect to *Cort's* second factor, "legislative intent, explicit or implicit, either to create such a remedy or to deny one", 422 U.S. at 78, 95 S.Ct. at 2088, that my disagreement with the majority is at its sharpest. In *Cort,* as in other statutory implication cases, the underlying premise is that Congress may explicitly create or deny a private remedy; what Congress gives, it may take away. There is no underlying right which is constitutionally inviolate. In a statutory case, therefore, the implication question is whether congressional intent to create or deny a remedy is best effectuated by judicial implication of a cause of action. Correspondingly, the en banc majority seems to read *Bivens* as "recogniz[ing] that congressional intent to create a remedy must guide a court in determining *whether* to imply a remedy from provisions of the Constitution." (Emphasis added). Majority opinion, *supra,* at 798. I find no such recognition in *Bivens* and believe this reading, as applied by the majority to deny Ms. Davis any remedial mechanism, is simply irreconcilable with *Bivens.* As pointed out in Section III of this dissent, the *Bivens* Court addresses the relevance of congressional action only *after* it has determined that some means of redress is constitutionally mandated; the voice of Congress is relevant, if at all, only in guiding the *court* in its determination as to whether damages provide an appropriate remedy. There is *no* suggestion in *Bivens* that Congress can negate the existence of *every* remedy which might vindicate a constitutional right, only an indication that the Court might accord some deference to an "explicit congressional declaration that persons injured by a federal officer's violation" of a constitutional right "may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." 403 U.S. at 397, 91 S.Ct. at 2005.

The en banc majority does not—and cannot—state that Congress has provided such an alternative remedy. Instead, the court tries to draw support for its position from the fact that "Congressional remedial legislation for employment discrimination has carefully avoided creating a cause of action for money damages for one in Davis' position." Majority opinion, *supra,* at 798. Here the confusion between constitutional and statutory implication is most evident. Given the constitutional mandate for *some* effective remedy, the second *Cort* factor, legislative intent to deny any remedy, is simply irrelevant to this case. *See* Dellinger, *supra* n. 11, at 1548–49.

Much the same criticism can be levelled against the en banc majority's application of the third *Cort* criterion, consistency with the underlying purposes of the legislative scheme. The majority correctly notes that Congress, in providing statutory relief from employment discrimination under Title VII for employees in the private sector and in other spheres of government service, *see* majority opinion, *supra,* at 797–798, has carefully avoided furnishing relief of any sort to many of its own employees. By providing an administrative—judicial mechanism for ensuring the rights of *covered* employees, Title VII may well constitute "an explicit congressional declaration" that covered employees "must be remitted to another remedy, equally effective in the view of Congress." Indeed, the Supreme Court has held that for federal employees covered by the complex and systematic remedial scheme of Title VII, that statute provides the exclusive judicial remedy. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).[17] Nothing similar can be said about congressional employees in the position of

---

respect less specific than the fourth amendment. *See* majority opinion, *supra,* at 797–798.

**17.** In *Brown,* the Court did not reach the constitutional issue of whether, absent the applicability of Title VII or an alternative statutory remedy, federal employees would be without any means to redress discriminatory treatment

"that backpay or other compensatory relief," *id.* at 826, 96 S.Ct. at 1965; it merely noted, based on legislative history, that Congress desired a remedy to be available and reasonably perceived an absence of effective remedies then (in 1972) in existence. The two cases cited by the Court as substantiating the reasonableness of Congress' perception, *Gnotta v. United*

Ms. Davis, who are statutorily excluded from the coverage of Title VII. Congress has provided *no* remedial mechanism for them. Such employees are in no sense bound up in the statutory system of protections created by Congress, and I cannot perceive how according Davis a vehicle to enforce her constitutional rights would detract from or be inconsistent with the operation of the statutory scheme within the sphere of its application. I am also hard put to understand the en banc majority's suggestion that a constitutional cause of action would "deal more generously with those in Davis' position," majority opinion, *supra*, at 798–799, than covered federal employees are dealt with under Title VII. It is true that if accorded a *Bivens* action, Davis could sue Representative Passman for damages in his individual capacity, while a Title VII plaintiff could not. But Title VII, for those to whom it applies, lowers the bar of sovereign immunity to permit a back pay award, together with possible equitable relief, directly against the United States. It also affords the possibility of relatively quick and inexpensive relief at the administrative level. This seems to me no less favorable than a possible recovery against a former congressman. It is unnecessary to speculate here on whether extension of Title VII to currently non-covered congressional employees would be the most appropriate mechanism for protection of constitutional rights or whether a remedial mechanism more carefully tailored to the particularities of congressional employment relationships would be preferable;

I note only that Congress has done neither.[18] In these circumstances, the problem confronting us is precisely analogous to that before the *Bivens* court, and the response should be the same, to make available "a particular remedial mechanism normally available in the federal courts,"

403 U.S. at 397, 91 S.Ct. at 2005, recalling that

> where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.

403 U.S. at 392, 91 S.Ct. at 2002, *quoting Bell v. Hood*, 327 U.S. at 684, 66 S.Ct. 773. For ours is the "particular responsibility to assure the vindication of constitutional interests . . . ." 403 U.S. at 407, 91 S.Ct. at 2010 (Harlan, J., concurring).

I am also unpersuaded by the majority's suggestion that while fourth amendment violations "occur in a well-defined setting familiar to the courts," damage remedies for due process violations in general, and equal protection claims in particular, are somehow not "judicially manageable." *See* majority opinion, *supra*, at 798–799. As the Court observed in *Bivens*, "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." 403 U.S. at 395, 91 S.Ct. at 2004 (citations omitted). I have little doubt that the experience of judges in dealing with employment discrimination claims "supports the conclusion that courts of law are capable of making the types of

*States*, 415 F.2d 1271 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), and *Blaze v. Moon*, 440 F.2d 1348 (5th Cir. 1971), both denying the availability of damages, were decided prior to the Supreme Court's seminal decision in *Bivens*. Obviously, nothing in *Brown* determines that Congress may negate the existence of a cause of action to vindicate a constitutional right without providing an alternative and equally effective remedy. *See Davis v. Passman*, 544 F.2d at 874–76 (panel opinion). Congress did provide an acceptable alternative for those employees covered by Title VII. It provided nothing for Ms. Davis or those in her position.

18. The choice properly before this court is one between alternative remedies. No party before

us has suggested that we undertake to fashion a remedy precisely analogous to that provided by Title VII, if indeed such a remedy is within our judicial power. While this court may, and should, consider congressional policies in choosing the appropriate remedy, we should not refrain from adopting such judicial remedies as are available and meaningful to the plaintiff merely because Congress has adopted a constitutionally sufficient but different remedial scheme for other employees. It is no answer that the only available judicial remedy might be more favorable than the remedy fashioned by Congress if the only alternative to a more favorable remedy is no remedy at all.

judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion" of equal protection rights of the sort asserted here. *Cf. Bivens*, 403 U.S. at 409, 91 S.Ct. at 2011 (Harlan, J. concurring). The en banc court's analysis of this factor, to the extent it is not reducible to another floodgates argument, seems to me an argument against the validity of *any* means of vindication of equal protection rights, not simply against the choice of damages as an appropriate remedial mechanism. With respect to this factor as well as the preceding one,[18a] the en banc majority's mechanical application of the *Cort* statutory criteria as somehow "relevant and worthy of consideration" fails to consider the distinctive features of implication of rights directly from the Constitution and comes to a result contrary to that commanded by *Bivens*.

This is also regrettably true in the court's application of the fourth and final *Cort* factor, whether "the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78, 95 S.Ct. at 2088. The en banc majority's apparent conclusion that this is an apt characterization of a claim by a congressional employee working in a congressional office building alleging sex discrimination violative of the fifth amendment to the United States Constitution by a member of Congress seems to me a novel view of the operation of "Our Federalism." The majority, intent on avoiding the horrors, real or imagined, of a flood of procedural due process claims carrying along traditional state tort actions, here as elsewhere never comes to consider the facts of the case before it.[19]

Nor is this case in any sense an attempt to end-run possible statutory limitations of § 1983, unlike the only two Court of Appeals cases cited by the en banc majority as declining to imply *Bivens* actions from the due process clauses. *See* majority opinion,

---

**18a.** The majority apparently also finds, in *Bivens'* responsiveness to "the particular difficulties presented in enforcing the guarantees of the fourth amendment," in particular, the "hostility of law enforcement officials to the restraints of the fourth amendment," majority opinion *supra*, at 798–799, something akin to this third *Cort* factor. The inference the majority draws from this discovery, apparently that the *Bivens* action is uniquely necessary in the fourth amendment context, is one I am unable to follow. For what seems to me decisive in *Bivens* is the fact that whatever remedies were available to others whose fourth amendment rights had been violated, such remedies were meaningless to Bivens himself; thus, the existence of those other remedies was irrelevant to the Court in its decision to create a cause of action to vindicate the rights of the plaintiff in the case before it. Accordingly, there is no need to speculate on the comparative hostility of law enforcement officials to the restraints of the fourth amendment and of Congressmen to the possibility of being answerable in damages for violation of their employees' equal protection rights.

In this respect, it is worth noting that an *amicus* brief was submitted in this case by signatories of the House Fair Employment Practices Agreement, including both Members of Congress and congressional employees. That Agreement provides, *inter alia*, that the signatories will not discriminate against an employee or applicant for employment on the basis of sex. *Amici* "see absolutely no harm to the legislative process if Members of Congress are required to conform to constitutional standards when dealing with their employees." Amicus Brief at p. 3. *See also* 5 U.S.C. § 7151.

**19.** The en banc majority quotes *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), to the effect that "the range of interests protected by procedural due process is not infinite." *Id.* at 709, 96 S.Ct. at 1164, *quoting Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). *Paul*, of course, rejected "the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. at 701, 96 S.Ct. at 1161 (emphasis added). Without engaging in any polemical discussion about the wider implications of *Paul*, we note first, that Ms. Davis' damages include a loss of employment; second, that her claim is bottomed on equal protection and not on procedural due process; and third, that vindication of Ms. Davis' fifth amendment claim is in no way inconsistent with the Court's observation in *Paul* that the fourteenth amendment "did not alter the basic relation between the States and the national government." *Id.* at 700, 96 S.Ct. at 1160, *quoting Screws v. United States*, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945).

*supra*, at n. 4. In *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977), the First Circuit refused to imply a right of action for vicarious liability against a municipality under the fourteenth amendment in the teeth of Supreme Court decisions foreclosing municipal liability under § 1983. In distinguishing the result in *Bivens* the *Kostka* court noted that the plaintiffs before it "here have available to them a right of action which is measured by constitutional standards: § 1983," *Id.* at 42, and resisted the attempt to impose vicarious liability on a municipal "deep pocket defendant", *id.* at 41, given "something akin to an explicit Congressional determination that political subdivisions are not to be held liable in damages" when "municipal employees violate individuals' constitutional rights." *id.* at 43. The court suggested that "the existence of a statutory remedy which is designed to implement the constitutional guarantee may itself render the *Bivens* analysis inappropriate," *id.* at 42, and made the precise inquiry which the majority refuses to make here: "We cannot say that the remedial scheme enacted by Congress—permitting damages recoveries

under limited circumstances and injunctive relief whenever there has been a sufficient prior threat of harm—does not adequately implement the constitutional guarantees, at least in cases in which there has been no municipal involvement in the wrongdoing." *Id.* at 44.

*Kostka* is in no sense inconsistent with the result urged in this dissent and is remarkably similar in its analysis to the approach advocated here. The *Kostka* court observed the Supreme Court's direction to "carefully assess the existing remedies," *id.* at 42, and to "focus on the precise remedy plaintiffs wish us to create." *Id.* at 44. The First Circuit found that Congress had created in § 1983 a statutory remedy "designed to implement the constitutional guarantee" against those individuals directly responsible for the alleged violations of Kostka's constitutional rights [20] and rested its decision on the adequacy of that remedy.[21] Congress had provided *no* remedy to redress the constitutional wrongdoing here. The en banc majority, unlike the *Kostka* court, must respond to this fact; it has not done so.[22]

---

**20.** The court noted that qualified immunity might be available to those individuals, *id.* at 40; defendant here also claims the availability of absolute or qualified immunity. The *Kostka* court properly recognized that immunity is analytically distinct from the implication of a constitutional cause of action and should be addressed with respect to its own underlying policies. In the case at bar, to the extent the immunity issue is relevant to the choice of an appropriate remedial mechanism, the underlying policies weigh in favor of the damages relief sought here. *See* text, *supra*, at 812.

**21.** The *Kostka* court's determination that the § 1983 remedy was adequate was explicitly limited to "cases in which there has been no municipal involvement in the wrongdoing." *Id.* at 44. "Were we faced with a case in which the municipality had ordered the constitutional violation, the application of the constitutional test could be different." *Id.* at 45. Here there can be no doubt that if wrongdoing was done, the defendant Passman was responsible for doing it.

**22.** In *Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir. 1977), the second Court of Appeals case cited by the en banc majority, the Third Circuit faced a claim somewhat similar to that advanced in *Kostka*. The Third Circuit found

that "[i]f plaintiffs prove the racially motivated deprivations of their rights which they allege, section 1981 will afford them the redress in federal court which they seek" and affirmed the district court's dismissal of fourteenth amendment claims on the basis of *Bivens'* teaching "that the existence of an effective and substantial federal statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy on the plaintiffs' behalf." *Id.* at 1024–25 (citations omitted). Judge Garth, dissenting in part and concurring in part, argued that no fourteenth amendment cause of action could ever be asserted against a city. Judge Garth's reasoning was based in part on logic akin to the *Kostka* courts, and in part on the observation

that the framers of the Fourteenth Amendment intended to confer upon *Congress*—not the courts—the primary responsibility for developing appropriate measures to enforce the Amendment. Section five of the Fourteenth Amendment provides that 'Congress shall have power to enforce, by appropriate legislation, the provisions of this article.' None of the first eight Amendments contains a similar provision. *Compare Bivens* . . . (implied cause of action under Fourth Amendment); *Paton v. LaPrade*, 524 F.2d 862 (3rd Cir. 1975) (First Amendment); *Unit-*

## V.

The en banc court also expresses a fear that "implying this damage action necessarily would draw into the federal judicial system a wide range of cases whose resolution Congress has not committed to the federal judiciary" and "render meaningless the power the Constitution vests in Congress under Article III, Section 1 of the Constitution to establish the jurisdictional ambits of the inferior courts it has created." *See* majority opinion, *supra*, at 800, 801. Once again, the mechanism of this transformation is more clear to the majority than it is to me; I would have thought the wording and history of 28 U.S.C. § 1331(a), committing to the federal courts jurisdiction of actions arising "under *the Constitution*, laws, or treaties of the United States" exemplify a rather unambivalent exercise by Congress of its Article III powers.[23]

## VI.

As I would hope the foregoing illustrates, one need not abandon or demean technical legal analysis to uphold a right of action for damages implied directly from the due process clause of the fifth amendment. But I would be less than candid in suggesting that broader philosophical and jurisprudential concerns are not also implicated in the decision of this case. Other courts have spoken of "*Bivens'* sweeping approbation of constitutionally-based causes of action." *Brault v. Town of Milton*, 527 F.2d 730, 734 (2nd Cir.), *rev'd en banc on other grounds*, 527 F.2d 736 (2nd Cir. 1975); *see also Gardels v. Murphy*, 377 F.Supp. 1389 (N.D.Ill. 1974). To some, *Bivens* may be an abhorrent aberrance in our jurisprudence, but to me its benevolent embrace of constitutional rights is a treasure in our judicial trove. I would not desecrate one syllable of that opinion by deviating from its high purpose.

While constitutional interpretation may be subject to ebb and flow, I have never understood the task of the federal judiciary to be the damming—or damning—of rights that spring from that noble document. Courts are not engineers, floodgating constitutional rights. The Supreme Court has spoken, definitively, on the existence of an

---

ed States ex rel Moore v. Koelzer, 457 F.2d 892 (3rd Cir. 1972) (Fifth Amendment). *Id.* at 1059. Perhaps needless to say, we find nothing in Judge Garth's observation or in the opinion of the *Mahone* majority inconsistent with the core analysis proposed in this dissent for Ms. Davis' fifth amendment claim.

**23.** The en banc majority, while referring at one point to its "affirmance on the jurisdictional ground," majority opinion, *supra*, at 801, explicitly states elsewhere that its affirmance is based on the ground "that the law affords Davis no private right of action." *Id.* at 795. I read the court's decision as in fact finding proper jurisdiction over this case under 28 U.S.C. § 1331(a) and proceeding to a decision on the merits, under Fed.R.Civ.P. 12(b)(6), that the due process clause of the fifth amendment does not support an implied cause of action for damages. Accordingly, jurisdiction will no longer lie in the courts of this circuit to entertain damage actions "arising under" the fifth amendment's due process clause. It is only in this sense that *Weir v. Muller*, 527 F.2d 872 (5th Cir. 1976), is overruled. I do not understand the court's action today as denying the analytic soundness of *Weir's* statement that "The jurisdictional issue here is entirely separate from the [question] whether the complaint states a claim on which relief can be granted," *id.* at 873, citing *Bell v. Hood* and *Bivens*. *See*

also *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977):

The question of subject matter jurisdiction is, of course, distinct from that whether plaintiffs have stated a claim upon which relief may be granted. So long as a claim for federal relief is not frivolous, the action arises under federal law for purposes of § 1331 and the federal court has jurisdiction to adjudicate the claim that a federal right of recovery exists. Since no . . . decision forecloses us from inferring a remedy under the Fourteenth Amendment and since *Bivens* gives the plaintiff's claim at least surface plausibility, we have jurisdiction under § 1331.

*Id.* at 41 n. 5 (citations omitted); *Mahone v. Waddle*, 564 F.2d 1018, 1022 (3rd Cir. 1977). Thus, the court's decision today does not remove jurisdiction from the district courts to entertain *Bivens*—style claims brought under constitutional provisions other than the due process clauses. In each case, so long as the federal claim is not frivolous or barred by a decision of this Circuit or the Supreme Court, jurisdiction will lie for a particularized inquiry, of the sort accorded the due process clause in this case, as to whether a cause of action has been stated.

action for damages flowing directly from the fourth amendment. While judicially self-executing constitutional rights may be exiguous, I find nothing in logic, history, or precedent that directs the building of a floodgate between the fourth amendment and the fifth. On examining the constitutional blueprints I, like the majority, find a right embodied in the fifth amendment; I unlike the majority, would allow that right to be vindicated. If vindication is to be denied, and the *Bivens* landmark washed away in a new constitutional downpour, I would prefer that the cloudburst come not from us, but from the Supreme Court on high. Like Noah, who waited forty days and forty nights, I have faith that the rainbow will finally emerge.[24]

Congress in its wisdom may provide a mechanism for enforcement of a constitutional right, and that mechanism, if effective, is entitled to some measure of judicial deference. But congressional disinclination to provide a means of enforcement does not—cannot—mean that a constitutional right is obliterated. Statutory actions may give breath to constitutional rights, but congressional inaction cannot suffocate them. In the case at hand, Congress has provided no remedy; therefore, the words of the Constitution must be our guiding star. We must not be misdirected by fear of losing our way in some celestial darkness in the limitless expanse of constitutional space. Not legal science but legal astrology limits *Bivens'* applicability to the fourth amendment, severing the cusp between the fourth and the fifth solely in accordance with the motions of our docket. Were crowded dockets to be our gyroscopes, courts might routinely strip litigants of their constitutional rights out of fear that others might follow their juridical path. I fear that is the slippery slope my brethren embark upon today.

In *Bivens* the Court founded a cause of action for damages directly on the fourth amendment. There is no reason to believe the fifth amendment stands in an inferior position to the fourth. The fifth amendment is constitutionally prime and in constitutional mathematics shares a common denominator with the fourth: the obligation of the federal judiciary "to assure the vindication of constitutional interests." If *Bivens* be a jurisprudential thorn or sport, let the Supreme Court pluck it out. Those of us who sit in a lower judicial caste need not attempt this extirpation.

I have given myself the *Allen* charge. Distasteful as it is to me, I cannot find it possible to yield my conscience to the preponderant majority, respectful as I am of my brothers' intellect, their integrity, their dedication and their loyalty to constitutional privileges. In sorrow I mourn their error.

---

24. I am reinforced in my faith by the undeniable fact that the two-by-two ascent into the ark was in conformity with equal protection norms.